IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

QUINTON BEASLEY, #B-69081, )
)
      Plaintiff, )
)
vs. ) CIVIL NO. 11-cv-459-JPG
)
GLADYSE TAYLOR, LEE RYKER, )
LIEUTENANT STAFFORD, SHERRY )
BENTON, PAMELA MORAN, BILL )
RISSE, and MS. HOSKINSON, )
)
      Defendants. )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Quinton Beasley, who at the time he filed this action was incarcerated in Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Since the case was filed, Plaintiff has been released on parole. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from
>     such relief.

28 U.S.C. § 1915A.[1]

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Prior to filing the instant action, Plaintiff brought another civil rights case in this Court, *Beasley v. Stephens, et. al*, No. 10-cv-895-GPM (S.D. Ill., filed Nov. 9, 2010). In that case, he

---

[1] The screening provisions of § 1915A are applied because Plaintiff was a prisoner at the time he brought this action.

sued Lawrence Warden Lee Ryker, Randy Stephens, the Prisoner Review Board, Administrative Review Board, and the Illinois Department of Corrections, claiming that he was improperly charged with a parole violation, and as a result was put into a higher risk security level during his incarceration at Lawrence. That case was dismissed on July 7, 2011, for failure to state a claim upon which relief may be granted. In the instant case, Plaintiff alleges that various actions were taken against him by the named Defendants, all in retaliation for his filing of the prior lawsuit described above, and for pursuing other grievances over prison conditions.

In his complaint, Plaintiff references several instances that are described with particularity only in his attached grievances and other documents. On January 10, 2011, he was placed in segregation on investigative status (he does not explain why) (Doc. 1-1, pp. 4-5; 17). He claims that during the initial 30 days of his segregation, in violation of the Illinois Administrative Code, he was never interviewed by the reviewing officer, nor was any investigation conducted regarding the reasons for his placement in that status. Defendant Warden Ryker and Defendant Stafford then extended Plaintiff's stay in segregation for a total of 90 days (Doc. 1-1, pp. 5, 18; Doc. 1, p. 8). The response to Plaintiff's grievance of April 10, 2011, states that after his initial placement on investigative status, Plaintiff's status was changed to administrative detention as of February 10, 2011. Plaintiff apparently remained in administrative detention for the final 60 days of his confinement in segregation (Doc. 1-1, p. 17).

Plaintiff further complains that Defendant Moran (the grievance officer) failed to investigate or address Plaintiff's claims of staff misconduct after he filed a grievance over his placement in investigative segregation (Doc. 1., p. 8; Doc. 1-1, pp. 13-24). Defendants Benton and Risse allegedly failed to address his grievances or improperly reviewed them (Doc. 1, p. 8).

He claims Defendant Risse informed him that superiors had instructed him not to do anything about Plaintiff's grievances (Doc. 1, p. 8: Doc. 1-1, p. 8).

Plaintiff also alleges that the conditions of his segregation cell were inhumane. He was allowed to shower only once a week, he was denied any yard recreation time, he developed excruciating back pains due to the lack of activity, the water in his cell had a bad taste and turned his clothing brown, and his phone calls to his public defender were restricted (Doc. 1, pp. 7-8; Doc. 1-1, pp. 18-19). In addition, his outgoing mail to the Administrative Review Board was destroyed by Defendant Hoskinson and his incoming mail was delayed. He claims his continued confinement under these conditions was in retaliation for complaints and grievances he had filed.

Finally, he was transferred to another prison, still under administrative detention status.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into five (5) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Introduction - Retaliation**

It is well settled that prison officials may not retaliate against inmates for filing grievances, bringing lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286

F.3d 437, 439 (7th Cir. 2002). Naming the suit or protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* A complaint that provides a short, clear statement of the relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim. *Id.*

At issue here is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). With these criteria in mind, the Court will consider Plaintiff's specific claims.

**Count 1 - Segregation**

Illinois statutes and correctional regulations do not place limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody. Accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *Williams v. Ramos*, 71 F3d 1246, 1248-49 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-1284 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Moreover, continued confinement in administrative detention, such as Plaintiff experienced for the final 60 days of his segregation, does not implicate a constitutionally protected liberty interest. *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1995). Although Plaintiff was subjected to more burdensome conditions, those conditions are "within the normal limits or range of custody which the

conviction has authorized the [government] to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer of inmates to prison with more burdensome conditions of confinement not a violation of due process); *see Sandin*, 515 U.S. at 477. Administrative detention does not "constitute a 'grievous loss' of liberty, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), an atypical and significant hardship on the prisoners generally in relation to the ordinary incidents of prison life, nor a dramatic departure from the basic conditions or duration of the prisoner's sentence." *Crowder*, 74 F.3d at 815 (citing *Sandin*, 515 U.S. at 481-85).

It appears that the restriction on telephone calls to Plaintiff's public defender was one of the standard conditions imposed on prisoners in segregation. If Plaintiff is alleging that he was unconstitutionally deprived of access to the courts, he has failed to state such a claim. He does not describe any meritorious court action that was adversely affected by the telephone restriction. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Nor does he assert that he was unable to communicate with the attorney in writing.

For these reasons, Plaintiff cannot maintain a substantive claim for a violation of his constitutional rights for his 90-day placement in investigative and then administrative segregation. However, even though Plaintiff's confinement in segregation is not actionable, if the placement or retention in segregation was done in retaliation for the exercise of a constitutionally protected right, then it may give rise to a viable § 1983 claim. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory

transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

Similarly, the transfer of Plaintiff to another institution under continued administrative detention is not actionable in and of itself. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). But a retaliatory transfer may form the basis for a constitutional claim. *Higgason*, 83 F.3d at 810.

Plaintiff has alleged that Defendant Ryker kept him in segregation and transferred him to another prison, in retaliation for the previous lawsuit that Plaintiff filed against him in this Court. Likewise, he claims that Defendant Stafford caused his stay in segregation to be extended, in retaliation for Plaintiff's complaints challenging his conditions of confinement. At this stage of the litigation, it cannot be determined whether these Defendants were motivated by retaliation when they placed and retained Plaintiff in segregation. Therefore, the retaliation claims against Defendants Ryker and Stafford shall receive further consideration.

**Count 2 - Improper Handling of Grievances**

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). In addition, the

alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430. Thus, Plaintiff has no viable claim against Defendant Risse for failing to respond to his grievance, Defendant Moran for allegedly lying about the review of his grievances and failing to answer them, or Defendant Benton for "concurring" with the improper review of Plaintiff's grievances.

In each case, however, Plaintiff has alleged that these Defendants' actions or inactions regarding the handling of his grievances were taken in retaliation for Plaintiff's complaints. If Plaintiff can prove this was their motivation, he may be able to establish a constitutional violation. Therefore, the retaliation claims against Defendants Risse, Moran, and Benton are not subject to dismissal at this time.

**Count 3 - Interference With Mail**

Plaintiff asserts that Defendant Hoskinson retaliated against him by opening and destroying his outgoing "privileged/legal" mail, and delaying his incoming mail. This claim appears to be based on Plaintiff's grievance dated April 6, 2011, which stated that his mail to the Administrative Review Board ("ARB") was opened and delivered in a damaged condition (Doc. 1-1, p. 24). Plaintiff was later reimbursed for the cost of his stamped envelope, and it appears that his correspondence was ultimately delivered to its destination (Doc. 1-1, pp. 26-30).

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the

> courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff,* 418 U.S. at 577, 94 S.Ct. 2963; *Castillo v. Cook Cnty. Mail Room Dep't,* 990 F.2d 304, 305-06 (7th Cir. 1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).

Although Plaintiff asserts that his mail to the ARB was "privileged/legal" mail, he is referring to the definitions described in the offenders orientation manual (Doc. 1-1, p. 23), which differs from the analysis in the case cited above. Outgoing mail to the ARB, a division of the Department of Corrections, is considered "legal" or "privileged" mail for postage purposes – meaning that if an inmate lacks funds in his trust account to pay the cost of postage, the prison is obligated to send the mail, just as it does for inmate letters to attorneys, even if it results in a negative balance in the inmate's account. However, a letter to the ARB is not "privileged" for the purpose of analyzing whether Plaintiff's mail was unconstitutionally interfered with. Only correspondence between a prisoner and an attorney, which bears the attorney's name and is marked as legal mail, is considered privileged in the constitutional sense. *See Wolff*, 418 U.S. at 577. Plaintiff's correspondence with the ARB was not communication with an attorney.

Interference with non-legal mail may give rise to a constitutional claim. However, a sporadic disruption of mail service, such as Plaintiff alleges here, will not violate the constitution. A valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment." (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir.

1987))). Thus, Plaintiff's allegations in the instant complaint do not rise to the level of a constitutional violation for mail interference.

What remains, again, is Plaintiff's claim that Defendant Hoskinson's interference with his mail was done in retaliation for his complaints about prison conditions. As with the previous counts, this retaliation claim shall receive further consideration.

**Count 4 - Inhumane Cell Conditions**

Plaintiff complains about unpleasant conditions in his segregation cell – the water was allegedly contaminated, and he was limited to showering only once a week in unheated water. In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346; *See also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective

analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Turning to Plaintiff's specific complaints, the restriction to only one shower each week does not rise to the level of a constitutional deprivation. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (one shower per week for inmates in segregation is

constitutionally sufficient). In regards to his allegation that the drinking water was "contaminated," tasted bad, and stained his clothing brown, he does not state that he suffered any illness or health problems as a result of drinking the water for three months.

While these circumstances were unpleasant, they do not come close to describing the kind of objectively serious conditions that have been found to state a constitutional claim for cruel and unusual punishment. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 ( Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls). In contrast, mere discomfort and inconvenience do not implicate the constitution. *See Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986).

None of Plaintiff's allegations regarding the conditions of his confinement are sufficient to meet the objective component of a deliberate indifference claim. Nor does Plaintiff state any facts to indicate that any of the named Defendants was responsible for the conditions or had the requisite subjectively culpable state of mind. Acccordingly, Count 4 shall be dismissed with prejudice.

**Count 5 - Denial of Exercise**

Courts have held that short periods of exercise denial do not violate the Constitution. *See Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not unconstitutional); *Phillips v. Norris*, 320 F.3d 844 (8th Cir. 2003) (37 days in segregation without exercise "is

perhaps pushing the outer limits of acceptable restrictions" but does not create atypical and substantial hardship); *Vinson v. Texas Bd. of Corr.*, 901 F.2d 474, 475 (5th Cir. 1990) (claims for occasional denial of recreation were frivolous).

However, longer periods without exercise may state a constitutional claim. *See Delaney v. DeTella*, 256 F.3d 679, 683-85 (7th Cir. 2001) (6-month denial states a claim; a strong likelihood of injury is present after 90 days); *Hearnes v. Terhune*, 413 F.3d 1036, 1042-43 (9th Cir. 2005) (9-month denial states a claim); *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (6 and a half month denial states a claim); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999) (9 month denial states a claim); *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (3 months with only 30 minutes of exercise states a claim).

Plaintiff states that he was denied all exercise privileges for the entire 90-day period that he was held in segregation, and points to Defendant Ryker as the responsible party for this deprivation. At this stage of the litigation, Plaintiff's allegations are sufficient to warrant further review.

**Defendant Gladyse Taylor**

Plaintiff's allegations against Defendant Taylor, the Acting Director of the IDOC at the time of these incidents, are that she "condoned" and "concurred with" the allegedly retaliatory and unconstitutional actions of her subordinates (Doc. 1, p. 7). However, he does not allege, nor do the circumstances indicate, that she had any direct involvement in the incidents he complains of.

Defendant Taylor cannot be held liable for the alleged violation of Plaintiff's constitutional rights merely because she was the head of the agency which administers the state's

prisons.  "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).  Therefore, Defendant Taylor shall be dismissed from this action with prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT FOUR** fails to state a claim upon which relief may be granted, and thus is **DISMISSED** with prejudice.  Defendant **TAYLOR** is **DISMISSED** from this action with prejudice.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **RYKER, STAFFORD, BENTON, MORAN, RISSE** and **HOSKINSON** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be

found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been

granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** May 23, 2012

     *s/J. Phil Gilbert*
**United States District Judge**